**CIVIL MINUTES – GENERAL**      **'O'**

| Case No. | 2:17-CV-07354-CAS-ASx | Date | November 4, 2019 |
|---|---|---|---|
| Title | HACKETT V. WELLS FARGO BANK, N.A., ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | | |
|---|---|---|---|
| Catherine Jeang | Laura Elias | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Eric Mercer | David Newman |

**Proceedings:** WELLS FARGO BANK, N.A.'S MOTION FOR SUMMARY JUDGMENT (ECF No. 41, filed October 2, 2019)

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT (ECF No. 44, filed October 4, 2019)

## I. INTRODUCTION

This case arises out of plaintiffs Walter H. Hackett III and Lorinda D. Hackett's attempts to modify and/or request information regarding the terms of their home loan with their lender, defendant Wells Fargo Bank, N.A. ("Wells Fargo" or "the bank"). In general, the Hacketts allege that Wells Fargo failed to comply with federal regulations requiring federally-insured lenders to provide adequate notices to prospective borrowers within established timeframes following the receipt of certain qualifying requests.

The Hacketts filed their first complaint in this Court on October 6, 2017. See ECF No. 1 ("Compl."). The complaint asserted a claim for relief pursuant to the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691(d)(1), two claims for relief pursuant to the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605(f), a claim for negligence pursuant to California law, as well as a claim pursuant to California Business and Professions Code § 17200, the California Unfair Competition Law ("UCL"). On March 4, 2018, the Court granted the bank's motion to dismiss the Hacketts' ECOA, negligence, and UCL claims, but denied the motion as to the RESPA claims. See ECF No. 24 ("First MTD Order").

The Hacketts filed their first amended complaint ("FAC") on April 4, 2018. See ECF No. 25. The FAC asserts the same five claims for relief that were previously alleged

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:17-CV-07354-CAS-ASx | Date | November 4, 2019 |
| Title | HACKETT V. WELLS FARGO BANK, N.A., ET AL. | | |

in the complaint. On June 25, 2018, the Court granted the bank's motion to dismiss the FAC as to the Hacketts' negligence claim, but denied the motion as to the Hacketts' other claims for relief. See ECF No. 31 ("Second MTD Order"). The four surviving claims for relief contained within the FAC—(1) the ECOA claim (which arises from two separate alleged violations), (2-3) the RESPA claims, and (4) the UCL claim—comprise the operative pleading before the Court.

Wells Fargo moved for summary judgment, or in the alternative, partial summary judgment on all four of the Hackett's remaining claims on October 2, 2019. See ECF No. 41 ("Bank's MSJ"). On October 4, 2019, the Hacketts filed their own motion for summary judgment, or partial summary judgment, on one of the violations alleged in their ECOA claim and one of their RESPA claims. See ECF No. 44 ("Hacketts' MSJ"). On October 11, 2019, the Bank filed its opposition to the Hacketts' motion, as well as a statement of genuine disputes in response to the Hacketts' asserted undisputed facts. See ECF No. 46 ("Bank's Opp."), ECF No. 46-3 ("BSGD"). The Hacketts filed their opposition to the bank's motion on October 15, 2019, as well as their own statement of genuine disputes. See ECF No. 47 ("Hacketts' Opp."), ECF No. 47-1 ("HSGD"). The parties filed replies on October 21, 2019. See ECF No. 48 ("Bank's Reply"), ECF No. 51 ("Hacketts' Reply").[1]

A hearing was held at which both parties appeared on November 4, 2019. Having considered the parties arguments, the Court finds and concludes as follows.

---

[1] Wells Fargo contends that the Court should deny the Hacketts' motion, and refuse to consider their opposition to the bank's motion, because the Hacketts failed to adhere to Local Rules 7-3 and 7-9. See Bank's MSJ Opp. at 8-10; Bank's MSJ Reply at 9-10. The parties shall follow the Local Rules. However, finding no prejudice to the bank, the Court will consider the Hacketts' motion and their opposition to the bank's motion. See Miranda v. S. Pac. Transp. Co., 710 F.2d 516, 521 (9th Cir. 1983) ("District courts have broad discretion in interpreting and applying their local rules."); see also Brunet, Parry & Redish, Summ. J. Fed. L. & Prac. § 4.6 (2018) (reviewing circuit court decisions that "support judicial discretion to overlook counsel's failure to follow local rules" to reach the merits of a summary judgment motion).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:17-CV-07354-CAS-ASx | Date | November 4, 2019 |
| Title | HACKETT V. WELLS FARGO BANK, N.A., ET AL. | | |

## II. FACTUAL BACKROUND

The following facts are not materially disputed and are set forth for purposes of background. Unless otherwise noted, the Court references only facts that are uncontroverted and as to which evidentiary objections have been overruled.

### A. The Hacketts' Loan And Related Bankruptcy

The Hacketts own a home in West Covina, California, where they live. HSGD ¶ 1. In June 2006, the Hacketts refinanced their home loan with Pinnacle Financial. Id. Wells Fargo began servicing that loan shortly afterward, and the bank remains the servicer of that loan to this day. HSGD ¶ 2. In 2010, the Hacketts defaulted on the loan by failing to make two loan payments, totaling approximately $6,000. HSGD ¶ 3. That same year, the Hacketts filed the first of several bankruptcy petitions. BSGD ¶ 2. The final bankruptcy petition was filed in 2012 and discharged in February 2015. HSGD ¶ 7. The Hacketts claim that they fully satisfied all of the arrears related to those bankruptcies by May 2014. Id. Wells Fargo, however, contends that only $929.39 of the $6,000.00 loan arrearage was paid by the Hacketts through the bankruptcy. Id. According to Wells Fargo, the bankruptcy trustee's final report indicates that the bank was stilled owed more than $5,000 on the loan at the time the bankruptcy discharged in February 2015. Id.

### B. The 2013 Loan Modification Request

Wells Fargo records indicate that the Hacketts filed paperwork applying for a loan modification on January 18, 2013. BSGD ¶ 6.[2] These same records indicate that a bank

---

[2] The bank disputes this fact on grounds that the Hacketts' evidence—a record created by Wells Fargo, and available to its customers online, containing a log of electronic communications and between customers and Wells Fargo, see W. Hackett Decl., Ex. 2—was not properly disclosed to Wells Fargo during discovery, and is thus inadmissible pursuant to Federal Rule of Civil Procedure 37(c). See Wells Fargo's Evidentiary Objections, ECF No. 46-2. Rule 37(c) does not bar the use of undisclosed evidence, however, "if the parties' failure to disclose the required information is substantially justified or harmless." Yeti by Molly, Ltd. v. Deckers Outdoor Corp., 259 F.3d 1101, 1106 (9th Cir. 2001). Here, the "failure to disclose is harmless since the information . . . is already in [Wells Fargo's] possession." Maharaj v. California Bank & Tr., 288 F.R.D. 458, 463 (E.D. Cal. 2013) (citing Creswell v. HCAL Corp., No. 04-CV-0388 BTM (RBB), 2007 WL 628036, at *2 (S.D. Cal. Feb. 12, 2007)); see also Brighton Collectibles, Inc. v. RK

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:17-CV-07354-CAS-ASx | Date | November 4, 2019 |
| Title | HACKETT V. WELLS FARGO BANK, N.A., ET AL. | | |

representative opened a file on the application on February 12, 2013. BSGD ¶ 9. The bank next communicated with the Hacketts on April 22, 2013, at which time the bank stated that their "file is under review." Id. In May 2013, the Hacketts' counsel at the time requested a status update on the application. Id. The bank representative stated she would investigate the status, and sent several messages to the Hacketts between May, June, and July 2013 to the effect that their application remained under review. Id. On July 25, 2013, the bank representative informed the Hacketts' that their application "documents have expired" and instructed the Hacketts to provide "all updated documents for the file at this time." Id.

The Hacketts resubmitted application documents to the bank in September 2013. HSGD ¶ 8. The bank sent a response letter on September 11, 2013 indicating that the bank was reviewing the application. HSGD ¶ 9. After its review, the bank sent the Hacketts a letter on October 3, 2013 including an offer for a "Special Forbearance Plan." HSGD ¶ 10. The plan confirmed that (i) the loan was in default, (ii) the Hacketts would make three monthly loan payments in a reduced amount of $1,543.77, and (iii) the loan would still not be current even if the three payments were made. HSGD ¶ 11. The Hacketts made the three payments pursuant to the plan. Id.

Wells Fargo and the Hacketts subsequently executed a one year Loan Modification Agreement in May 2014 ("the 2014 Modification"). HSGD ¶ 12. The 2014 Modification lowered the Hacketts' interest rate to 2.875% and reduced the monthly payment amount to $1,198.12 for the period between June 1, 2014 and July 1, 2015. Id. The 2014 Modification also established a total loan arrearage of $7,716.31. Id. The Hacketts made the required payments pursuant to the 2014 Modification agreement during its term. HSGD ¶ 14.

### C. The 2015 Loan Modification Request

The Hacketts applied for a second loan modification on July 15, 2015, two weeks after the terms of the 2014 Modification expired. HSGD ¶ 15. Wells Fargo sent a response letter the following day. HSGD ¶ 17. That July 16 letter stated that it was a "response to [the Hacketts'] recent request for mortgage assistance," and confirmed that the bank

---

Texas Leather Mfg., No. 10-CV-0419-GPC (WVG), 2013 WL 4716210, at *4 (S.D. Cal. Sept. 3, 2013) (same). There is no prejudice to Wells Fargo in relying on a document that Wells Fargo created and possesses to this day. The bank's objection to Exhibit 2 to the W. Hackett Declaration is therefore overruled.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:17-CV-07354-CAS-ASx | Date | November 4, 2019 |
| Title | HACKETT V. WELLS FARGO BANK, N.A., ET AL. | | |

"recently received documentation from you requesting mortgage assistance." Id. The letter instructed the Hacketts to call the bank to "determine what options might be available" to assist them, and directed the Hacketts to "gather" certain identified information "and have it handy when you call." Id. The Hacketts then spoke with the bank by phone on July 22, 2015. HSGD ¶ 18. On the phone, Wells Fargo advised the Hacketts that the bank required additional documentation: (i) two paycheck stubs from Lorinda Hackett; (ii) a Social Security award letter from Walter Hackett; and (iii) documents showing proof of change of circumstances. Id. Apart from the July 16 letter, there is no evidence in the record demonstrating that any of these requests were provided to the Hacketts in writing.

The next day, July 23, 2015, Wells Fargo informed the Hacketts in writing that the bank had closed the file on their request for modification because the Hacketts had failed to submit a complete application. HSGD ¶ 19.

### D. The 2016 Requests For Information

On February 1, 2016, the Hacketts wrote to bank representatives requesting information related to their loan. HSGD ¶ 20. The letter requested information that, the Hacketts contended, were related to their efforts to obtain another loan modification. Id. Wells Fargo sent the Hacketts a response dated that same day. HSGD ¶ 21. The Hacketts deny receiving the letter, and contest that Wells Fargo in fact sent the letter, even though the bank attaches the letter to its motion. Id. The bank's letter states that it would "complete our research" for the requested information "and provide you with the results on or before 02/15/2016." Id. On February 15, 2016, the bank sent another letter indicating that a substantive response could be expected before February 29, 2016. HSGD ¶ 22.

Wells Fargo wrote to the Hacketts again on February 24, 2016. HSGD ¶ 23. The February 24 letter attached more than 50 pages of documents and information requested by the Hacketts, including the relevant deed of trust, promissory notes, loan information report, as well as recent correspondence between the bank and the Hacketts. Id. The bank stated that it was "unable to provide any further information because" the Hacketts' "remaining requests are too broad." Id. The bank invited the Hacketts to submit "more specific details about what you're seeking," after which time they committed to review the request again. Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:17-CV-07354-CAS-ASx | Date | November 4, 2019 |
| Title | HACKETT V. WELLS FARGO BANK, N.A., ET AL. | | |

The Hacketts submitted a second request for information on March 1, 2016. HSGD ¶ 26. Wells Fargo acknowledged receipt on March 7, 2016. HSGD ¶ 27. On March 21, 2016, the bank sent the Hacketts documents that responded to the requested information, but again indicated that it could not comply with all of the Hacketts requests since some of those requests were too broad. HSGD ¶ 28.[3]

### E.  The Hacketts' Current Status

The Hacketts have been current on their loan payments since 2016. HSGD ¶ 16. There have been no foreclosure proceedings. HSGD ¶ 34. The Hacketts' credit ratings have neither increased nor decreased since 2015. HSGD ¶ 35. The Hacketts have approximately $300,000 in equity in their home, and do not plan to sell. HSGD ¶ 38. The Hacketts claim that, as a result of the bank's alleged misconduct, they have had to rely on short-term loans and retirement savings to make their mortgage payments. HSGD ¶ 39.

---

[3] The letter also stated that the bank was simultaneously reviewing the Hackett's loan in consideration for a possible modification. HSGD ¶ 28. The bank claims it never received certain requested information in connection with that 2016 modification request, and accordingly closed the file on July 26, 2016. HSGD ¶¶ 30-33. The Hacketts deny that they ever applied for a loan modification in 2016, and contend that what Wells Fargo construed as a modification request was, in fact, another (concurrent) request for information. Id. From what the Court can tell from what the Hacketts assert in their statement of genuine disputes and affidavits, the Hacketts retained the Dann Law Firm to assist with their requests for information, but the firm instead pursued a loan modification application on their behalf. See W. Hackett Decl. ¶¶ 35-37, ECF No. 47-3 ("On May 22, 2016, Plaintiffs received a letter from the Dann Law Firm regarding documents needed for a loan modification review. However, The Dann Law Firm was never retained or authorized to discuss loan modification. I hired the Dann Law Firm solely for the purpose of submitting and receiving a proper response to an RFI/NOE."). The Hacketts claim they sent Wells Fargo a "Notice of Error" in "late February 2016" explaining that the bank and/or the Dann Law Firm had misconstrued the Hacketts intentions, but they do not attach that letter to any of their moving papers, and provide no other evidence to indicate that Wells Fargo would have or should have known about this second request for information.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:17-CV-07354-CAS-ASx | Date | November 4, 2019 |
| Title | HACKETT V. WELLS FARGO BANK, N.A., ET AL. | | |

## III. LEGAL STANDARD

Summary judgment is only appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each claim upon which the moving party seeks judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party meets its initial burden, the opposing party must then set out specific facts showing a genuine issue for trial in order to defeat the motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); see also Fed. R. Civ. P. 56(c), (e). Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322; see also Abromson v. Am. Pac. Corp., 114 F.3d 898, 902 (9th Cir. 1997).

In light of the evidence presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law. See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631 & n.3 (9th Cir. 1987). When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted); Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co., 121 F.3d 1332, 1335 (9th Cir. 1997). Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue. See Matsushita, 475 U.S. at 587.

## IV. DISCUSSION

The parties cross move for summary judgment. For the reasons discussed below, the Court **DENIES** the Hacketts' motion, **GRANTS** the bank's motion in part, and **DENIES** the bank's motion in other respects.

### A. Hacketts' ECOA Claim

The ECOA "makes it illegal 'for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction . . . on the basis of race, color, religion,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:17-CV-07354-CAS-ASx | Date | November 4, 2019 |
| Title | HACKETT V. WELLS FARGO BANK, N.A., ET AL. | | |

national origin, sex or marital status or age.'" Schlegel v. Wells Fargo Bank, 720 F.3d 1204, 1210 (9th Cir. 2013) (quoting 15 U.S.C. § 1691(a)(1)).

Apart from this principal purpose, the ECOA also imposes procedural notice requirements. One requirement states that "[w]ithin thirty days . . . after receipt of a completed application for credit, a creditor shall notify the applicant of its action on the application." 15 U.S.C. § 1691(d)(1). Another requires creditors to provide "each applicant against whom an adverse action is taken" with "a statement of reasons for such action from the creditor." 15 U.S.C. § 1691(d)(2). An "adverse action" is a "denial or revocation of credit, a change in the terms of existing credit arrangement, or a refusal to grant credit in substantially the amount or on substantially the terms requested. Such term does not include a refusal to extend additional credit under an existing credit arrangement where the applicant is delinquent or otherwise in default." 15 U.S.C. § 1691(d)(6). When a creditor fails to give the required notice of taking an adverse action, the applicant may sue for a violation of ECOA. Schlegel, 720 F.3d at 1210.

The Hacketts claim that Wells Fargo violated these requirements in connection with their 2013 and 2015 loan modification applications to the bank. Specifically, they claim that the bank violated subsection (d)(1) in its handling of the Hacketts' 2013 application, and subsection (d)(2) in its handling of their 2015 application. Both parties move for summary judgment on these claims.

### 1. The 2013 Application Claim

Wells Fargo moves for summary judgment on the ECOA claim arising out of the 2013 loan modification application on grounds that the ECOA's notice provisions contained in § 1691(d)(1) do not apply to borrowers who are in default. The Hacketts' respond that the default exception only bars ECOA claims brought pursuant to § 1691(d)(2), which involve deficient notice following an adverse action, rather than the claims asserted here pursuant to § 1691(d)(1), which applies to notice deficiencies in non-adverse action settings. The Hacketts further contend that they are entitled to summary judgment on this claim because the undisputed evidence shows that its 2013 application to Wells Fargo was complete, and Wells Fargo failed to respond with its intended action within 30 days after receipt of the Hacketts' completed application.

"District courts in this circuit are split on whether a complete application to modify an existing loan in default falls within the scope of the ECOA notice requirements." Craig

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:17-CV-07354-CAS-ASx | Date | November 4, 2019 |
| Title | HACKETT V. WELLS FARGO BANK, N.A., ET AL. | | |

v. Capital One, N.A., No. 17-CV-3788-DMG (AJWx), 2018 WL 5857987, at *4 (C.D. Cal. Apr. 10, 2018). Some courts, considering the statute in isolation, have concluded that the default exception does not apply to claims brought pursuant to § 1691(d)(1). See, e.g., McMahon v. JPMorgan Chase Bank, N.A., No. 2:16-CV-1459-JAM (KJN), 2017 WL 2363690, at *3 (E.D. Cal. May 31, 2017) (concluding that "applicants are entitled to a determination on their application within thirty days whether or not they defaulted on their existing loan obligations") (citing MacDonald v. Wells Fargo Bank N.A, No. 14-CV-04970-HSG, 2015 WL 1886000, at *3 (N.D. Cal. Apr. 24, 2015), Banks v. JPMorgan Chase Bank, N.A., No. 14-CV-06429 JAK, 2014 WL 6476139, at *13 (C.D. Cal. Nov. 19, 2014), and Vasquez v. Bank of Am., N.A., No. 13-CV-02902-JST, 2014 WL 1614764, at *2-3 (N.D. Cal. Apr. 22, 2014), each of which reached the same conclusion).

However, these courts did not consider, or were not presented with, the relevant implementing regulations. See 12 C.F.R. § 202.2(c)(2)(ii); 12 C.F.R. § 202.9(a)(1)(i). "[C]ourts interpreting the implementing regulations," by comparison, "find that 'to the extent the statute was ambiguous about whether a notification is required where the applicant is already in default, the implementing regulations state clearly that no notice is required' when a borrower is in default." Craig, 2018 WL 5857987, at *4 (quoting Coury v. Caliber Home Loans, Inc., No. 16-CV-05583-RS, 2016 WL 6962882, at *5 (N.D. Cal. Nov. 29, 2016), and collecting cases). That is also what this Court concluded in the First MTD Order in this case. See Hackett v. Wells Fargo Bank, N.A., No. 17-CV-07354-CAS (ASx), 2018 WL 1224410, at *4 (C.D. Cal. Mar. 5, 2018) ("Hackett I") ("To the extent that ECOA is ambiguous about whether notification is required under section 1691(d)(1) to an applicant who is in default, the implementing regulations clarify that no notice is required in that circumstance.") (citing Smith v. Wells Fargo Bank, N.A., No. 15–CV–01779–YGR, 2016 WL 283521, at *7 (N.D. Cal. Jan. 25, 2016)). The Court continues to find these cases persuasive, and concludes that § 1291(d)(1) does not require notification to a loan modification applicant already in default. See Craig, 2018 WL 5857987, at *4 (concluding that, because applicant was in default, creditor "was not obligated to abide by the notification requirements set out in 15 U.S.C. § 1691(d)(1) and 12 C.F.R. § 202.9(a)(1)(i) unless it approved or countered the terms of her applications").

The threshold question as to the Hacketts' 2013 ECOA claim is therefore whether or not the Hacketts were in default at the time they submitted their application materials to Wells Fargo on January 18, 2013. See BSGD ¶ 6. The undisputed facts here establish that the Hacketts were in default at that time. The Hacketts first defaulted on their home loan in 2010. HSGD ¶ 3. In October 2013, the Hacketts and Wells Fargo agreed to a Special

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:17-CV-07354-CAS-ASx | Date | November 4, 2019 |
| Title | HACKETT V. WELLS FARGO BANK, N.A., ET AL. | | |

Forbearance Plan that confirmed, among other things, that the Hacketts were still in default on their home loan at that time. HSGD ¶¶ 10-11. Walter Hackett also conceded at his deposition that the Hacketts were in default on their home loan "[a]t the time that [the modification] request was made to Wells Fargo." See ECF No. 41-1 at 163:9-18.[4]

Because the undisputed evidence establishes that the Hacketts were in default on the loan they sought to modify in January 2013, and because the notice requirements of ECOA § 1291(d)(1) do not apply to loan modification applicants already in default, Wells Fargo is entitled to judgment on the Hacketts' ECOA claim predicated on the 2013 application as a matter of law. The bank's motion for summary judgment is accordingly **GRANTED** as to the ECOA claim arising out of the 2013 application, while the Hacketts' motion related to that same claim is **DENIED**.

### 2. The 2015 Application Claim

The Hacketts claim that Wells Fargo also violated its ECOA obligations in connection with its handling of the Hacketts' 2015 loan modification application. Specifically, the Hacketts contend that Wells Fargo failed to provide the Hacketts with a "statement of reasons" pursuant to 15 U.S.C. § 1691(d)(2) after taking an adverse action against them in July 2015, and/or failed to provide adequate notice that the Hacketts' application was incomplete. Wells Fargo moves for summary judgment on grounds that it was not obligated to provide the Hacketts with a "statement of reasons" because the Hacketts' application was incomplete. The bank contends that it also gave the Hacketts sufficient notice of the incompleteness of their application materials, and that the Hacketts do not submit evidence that they suffered damages as a result of the bank's alleged

---

[4] The Hacketts contend that, because they were in bankruptcy proceedings at the time, their default was excused. See Hacketts' MSJ Opp. at 10-12; Hacketts' MSJ Reply at 3. The Court disagrees. A bankrupt mortgagee does not become current on his or her prepetition arrears when he or she files a Chapter 13 petition, but when the bankrupt mortgagee makes all plan payments on the debt. See In re Rivera, 599 B.R. 335, 341 (Bankr. D. Ariz. 2019) (explaining that Chapter 13 bankrupt mortgagees "cure" their "pre-petition defaults to a secured creditor" when they make "plan payments disbursed by the trustee") (citing In re Lopez, 372 B.R. 40 (9th Cir. BAP 2007), aff'd 550 F.3d 1202 (9th Cir. 2008)). The Hacketts did not do so until at least May 2014. See HSGD ¶ 7.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | | | |
|---|---|---|---|
| | **CIVIL MINUTES – GENERAL** | | **'O'** |
| Case No. | 2:17-CV-07354-CAS-ASx | Date | November 4, 2019 |
| Title | HACKETT V. WELLS FARGO BANK, N.A., ET AL. | | |

misconduct, in any case. The Hacketts do not move for summary judgment on this ECOA claim.

The undisputed facts establish that the Hacketts applied for a loan modification on July 15, 2015. HSGD ¶ 15. Wells Fargo accordingly had an obligation to give notice to the Hacketts of the bank's action on that application within 30 days. See 15 U.S.C. § 1691(d)(2). Even though the bank determined that the application was incomplete, the bank had an obligation to give the Hacketts notice of incompleteness within 30 days. See 12 C.F.R. § 202.9(c). Oral communication, by itself, would not have been enough. See id. at § 202.9(c)(3) (explaining that while "a creditor may inform the applicant orally of the need for additional information," if an "application remains incomplete the creditor shall send a notice in accordance with paragraph (c)(1) of this section," which requires written notification pursuant to either 12 C.F.R. § 202.9(a) or 12 C.F.R. § 202.9(c)(2)).

Here, the bank contends it gave the Hacketts sufficient notice of incompleteness in its July 16, 2015 letter. See Bank's MSJ at 10. That letter states that the Hacketts should contact Wells Fargo and have certain materials "handy." HSGD ¶ 17. The bank also submits undisputed evidence demonstrating that a bank representative spoke with the Hacketts on July 22, 2015 about the materials missing from their application. HSGD ¶ 18. The Hacketts argue that these communications do not satisfy the bank's ECOA obligations. See Hacketts' Opp. at 14-15.

Based on these facts, and construing the evidence in the light most favorable to the Hacketts, who are the non-moving parties, the Court finds that a reasonable jury could conclude that the bank's response to the Hackett's 2015 loan modification application fell short of the ECOA's notification requirements. While it is undisputed that a bank representative had a telephone conversation with the Hacketts addressing missing materials, the bank was obligated to send a written notice to the Hacketts if the application remained incomplete. And to the extent the Hacketts rely on the July 16 letter as evidence of written notice, that letter does not expressly state that certain documents were missing from the Hacketts' loan modification application. The letter only instructed the Hacketts to "gather" those documents and have them "handy." Because the letter is ambiguous, whether it supplied adequate notice of incompleteness is a disputed material question of fact, and a triable issue that precludes summary judgment.

Moreover, the Hacketts have submitted sufficient evidence of actual damages to satisfy the summary judgment standard. Specifically, the Hacketts submit affidavits stating

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:17-CV-07354-CAS-ASx | Date | November 4, 2019 |
| Title | HACKETT V. WELLS FARGO BANK, N.A., ET AL. | | |

they used retirement savings, and were forced to obtain expensive short term loans, to make payments on their mortgage as a result of the bank's failure to timely process their modification application. HSGD ¶ 39. This evidence carries the Hacketts' burden on summary judgment.[5]

The Court accordingly **DENIES** the bank's motion for summary judgment on the Hacketts' ECOA claim arising out of the 2015 application.

**B.     Hacketts' RESPA Claims**

Regulations implementing RESPA require creditors that receive a loss mitigation application from a borrower to "[n]otify the borrower *in writing* within 5 days" that (i) "the servicer acknowledges receipt of the loss mitigation application," and (ii) "that the servicer has determined that the loss mitigation application is either complete or incomplete." 12 C.F.R. § 1024.41(b)(2)(i)(B) (emphasis added). "If a loss mitigation application is incomplete, the notice shall state the additional documents and information the borrower must submit to make the loss mitigation application complete and the applicable date . . . by which the borrower should submit the documents and information necessary to make the loss mitigation application complete." Id. at §§ 1024.41(b)(2)(i)(B), 1024.41(b)(2)(ii). After receiving "a complete loss mitigation application," a creditor has 30 days to "[p]rovide the borrower with a notice in writing stating the servicer's determination of which loss mitigation options, if any, it will offer to the borrower on behalf of the owner or assignee of the mortgage." Id. at § 1024.41(c)(1)(ii). If a creditor in receipt of a completed application makes a loss mitigation offer pursuant to (c)(1)(ii), the creditor must also "permit a borrower to make an appeal within 14 days after the servicer provides the offer of a loss mitigation option to the borrower." Id. at § 1024.41(h).

---

[5] At oral argument, the bank contended that, since evidence demonstrates that the Hacketts had previously used some of their retirement savings to make their mortgage payments before the bank's alleged violations, the bank's alleged violations cannot be said to have "proximately caused" the Hacketts to expend these resources. But the material question is whether the bank's alleged violations proximately caused the Hacketts to expend *additional* retirement savings. If so, those additional expenditures could be actual damages the Hacketts would be entitled to recover. The question, and the evidence in the record, accordingly presents a triable issue of fact that defeats summary judgment.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:17-CV-07354-CAS-ASx | Date | November 4, 2019 |
| Title | HACKETT V. WELLS FARGO BANK, N.A., ET AL. | | |

Other RESPA regulations require a creditor to respond to a borrower's request for information within 30 days, either by "[p]roviding the borrower with the requested information," or by "[c]onducting a reasonable search for the requested information and providing the borrower with a written notification that states that the servicer has determined that the requested information is not available to the servicer." 12 C.F.R. §§ 1024.36(d)(1)-(2). In the event a creditor determines that the requested information is not available, the creditor is required to "provide[] the basis for the servicer's determination." Id. at § 1024.36(d)(2). Similarly, other regulations require a creditor to respond to a borrower's "notice of error" by acknowledging receipt within five days and either "[c]orrecting the error or errors identified" by the borrower, or "[c]onducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination," as well as "information regarding how the borrower can request such documents." Id. at §§ 1024.35(d)-(e).

The Hacketts contend that they are entitled to summary judgment on their claim that Wells Fargo violated § 1024.41 by failing to provide adequate written notice that their 2015 loan modification application was incomplete (as the bank claims), and by failing to provide the Hacketts an opportunity to appeal prior to closing the review. See Hacketts' MSJ at 20-21. Wells Fargo cross-moves for summary judgment on the same claim on grounds that it had no notification obligations pursuant to RESPA because the Hacketts' 2015 application was not their "first" application, because RESPA only applies to completed applications, because the bank in any case complied with the asserted RESPA obligations, and because the Hacketts' do not present evidence of any damages cognizable pursuant to RESPA. See Bank's MSJ at 14-16, 18-23.

The Hacketts also claim that Wells Fargo violated § 1024.36 and/or § 1024.35 by failing to conduct a "reasonable search" for the requested information it did not provide, and by failing to conduct a "reasonable search" and submit an adequate response to its "notice of error." The Hacketts do not move for summary judgment on this claim, but Wells Fargo does. See Bank's MSJ at 16-18, 18-23. The bank contends it is entitled to judgment as a matter of law because undisputed evidence establishes that it timely and adequately responded to both requests for information, and because the Hacketts do not present evidence of any damages cognizable pursuant to RESPA. Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:17-CV-07354-CAS-ASx | Date | November 4, 2019 |
| Title | HACKETT V. WELLS FARGO BANK, N.A., ET AL. | | |

The Court addresses each claim in turn.

### 1. The § 1024.41 Claim Arising From The July 2015 Modification

Wells Fargo raises three threshold arguments that, it claims, bar the Hacketts from prevailing on their § 1024.41 theory as a matter of law. None has merit.

The bank first contends that 12 C.F.R. § 1024.41(i) bars RESPA claims predicated on a duplicative application. Because the Hacketts applied for a loan modification in 2013, the bank argues, they are not entitled to RESPA remedies in connection with their second loan modification application from 2015. The Court thoroughly considered and rejected this argument in its first First MTD Order, where it explained that "it would be unreasonable to conclude that Wells Fargo could have complied with section 1024.41's loan evaluation requirements with respect to plaintiffs' 2013 application, before the new requirements [of section 1024.41(i)] went into effect," especially because "section 1024.41 contains no express language evincing an intent that its requirements should apply retroactively to transactions prior to January 2014." Hackett I, 2018 WL 1224410, at *6. Observing that "numerous other federal district courts" had reached the same conclusion, the Court found "that Wells Fargo was obligated to comply with section 1024.41's notice requirements when it reviewed plaintiffs' June 2015 application, which was plaintiffs' first loan modification application after section 1024.41 became effective." Id. at *6-7. Nothing has changed.

The bank next contends that the Hacketts' RESPA claims fail because they did not submit a complete application. The bank cites Gelinas v. Bank of America, N.A., No. 16-CV-1355-RAJ, 2017 WL 1153859 (W.D. Wash. Mar. 28, 2017) for the proposition that "a 'complete loss mitigation application' is required for the RESPA provision to apply." Id. at *4. This case is inapposite. Gelinas concerned an alleged violation of 12 C.F.R. § 1024.41(g). That "provision" of RESPA *does* require a completed application, since it involves a creditor's obligation to consider and respond to a loss mitigation application "pursuant to (c)(1)(ii)" before it can pursue foreclosure proceedings against borrower. See 12 C.F.R. § 1024.41(g). Subsection (c)(1)(ii) concerns a creditor's obligation to respond to a "[c]omplete loss mitigation application." Id. § 1024.41(c)(1). Here, the Hacketts principally assert a RESPA claim pursuant to § 1024.41(b), which requires a creditor that receives a loss mitigation application from a borrower to "[n]otify the borrower in writing within 5 days" that (i) "the servicer acknowledges receipt of the loss mitigation application," and (ii) "that the servicer has determined that the loss mitigation application

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:17-CV-07354-CAS-ASx | Date | November 4, 2019 |
| Title | HACKETT V. WELLS FARGO BANK, N.A., ET AL. | | |

is either complete or incomplete." 12 C.F.R. § 1024.41(b)(2)(i)(B) (emphasis added). That provision, on its face, plainly applies to incomplete applications. So does the ensuing sentence in that subparagraph, which sets forth a creditor's response obligations to an incomplete application. Id. The bank's "completeness" argument accordingly lacks merit, as well.

Third, the bank argues that it is entitled to summary judgment on the § 1024.41 claim fails because the Hacketts fail to put forth evidence that creates a triable issue as to whether the Hacketts suffered any statutorily cognizable damages. RESPA allows borrowers to recover "any actual damages" they suffer "as a result" of the RESPA violation, as well as "any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance" with RESPA's requirements. 12 U.S.C. § 2605(f)(1)(B). To establish actual damages, a RESPA plaintiff must put forth evidence of "some pecuniary loss" attributable to the asserted RESPA violation. Lawther v. Onewest Bank, No. 10-CV-0054-RS, 2010 WL 4936797, at *6 (N.D. Cal. Nov. 30, 2010) (citing Garcia v. Wachovia Mortg. Corp., 676 F.Supp.2d 895, 909 (C.D. Cal. 2009); see also Molina v. Washington Mut. Bank, No. 09-CV-00894-IEG (AJB), 2010 WL 431439, at *7 (S.D. Cal. Jan. 29, 2010) ("Numerous courts have read Section 2605 as requiring a showing of pecuniary damages in order to state a claim.") (collecting cases). The bank contends that the Hacketts fail to put forward evidence that they have suffered any actual damages. See Bank's MSJ at 18-19. The Court disagrees. As noted above in connection with the Hacketts' ECOA claim, the Hacketts have submitted affidavits stating that they have had to obtain expensive short term loans, and exhaust some of their retirement savings, in order to make their mortgage payments as a result of the bank's failure to timely consider and act upon their loan modification applications. See HSGD ¶ 39. This is evidence that creates a triable issue for trial. The bank is accordingly not entitled to summary judgment on this basis.

This brings the Court to the central issue raised by the present motions on the § 1024.41 claim: whether undisputed evidence establishes that Wells Fargo's response to the Hacketts' July 15, 2015 loan application satisfied the notification requirements set forth by the regulation. Construing the evidence presented in the light most favorable to the non-moving party in connection with each motion, the Court cannot conclude that either the bank or the Hacketts are entitled to judgment as a matter of law. After receiving the Hacketts' application on July 15, Wells Fargo had five days to acknowledge receipt and indicate *in writing* whether the application was complete or not. 12 C.F.R. § 1024.41(b)(2)(i)(B). The only writing sent to the Hacketts by the bank within that time period was the July 16, 2015 letter. HSGD ¶ 17. But as discussed above, that letter—

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:17-CV-07354-CAS-ASx | Date | November 4, 2019 |
| Title | HACKETT V. WELLS FARGO BANK, N.A., ET AL. | | |

which instructed the Hacketts to "gather" certain documents and have them "handy"—does not clearly state, or fail to state, whether or not the loan modification application was incomplete. Nor does it clearly state, or fail to state, what missing documents the bank required. Nor does it clearly state, or fail to state, when the Hacketts would have needed to submit the documents to complete their application. Because the letter is ambiguous, a reasonable jury could reach either conclusion.[6] The letter accordingly raises a triable material question of fact that precludes the Court from granting summary judgment to either the bank or the Hacketts.

The parties' motions for summary judgment on the § 1024.41 RESPA claim are accordingly **DENIED**.

### 2. The §§ 1024.35/36 Claim Arising From The 2016 Requests

Wells Fargo moves for summary judgment on the §§ 1024.35/36 claim on grounds that its responses to the 2016 requests for information and/or notice of error were timely, adequate, and that, in any event, the Hacketts' do not present evidence of actual damages cognizable pursuant to RESPA. For the reasons discussed above in connection with the Hacketts' § 1024.41 claim, the Hacketts have put forth sufficient evidence to raise a triable issue of fact as to damages. See HSGD ¶ 39. And it is undisputed that Wells Fargo's responses to the February 1, 2016 and March 1, 2016 responses—sent on February 1 and March 7, 2016, respectively—fell within five business days and were timely. HSGD ¶¶ 21, 27. The question is whether those responses were adequate.

RESPA requires Wells Fargo to provide the Hacketts with the requested information, or else conduct a "reasonable investigation" in response to the Hacketts' requests and

---

[6] At oral argument, the Hacketts contended that the July 16 letter was deficient as a matter of law, and that the Hacketts are accordingly entitled to summary judgment. According to the Hacketts' counsel, the evidence shows that the Hacketts "already provided" all of the documents that the bank requested in its July 16 letter. The Hacketts argue that there is, therefore, no question that the Hacketts' application was complete and, as a result, no question that the bank's response fell short of its obligations. However, whether the Hacketts actually provided all of the documents that the bank deemed necessary to complete their application, and whether the bank's completeness determination was made in good faith and adequately communicated presents a question of fact for the jury.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES – GENERAL** | | 'O' |
|---|---|---|---|
| Case No. | 2:17-CV-07354-CAS-ASx | Date | November 4, 2019 |
| Title | HACKETT V. WELLS FARGO BANK, N.A., ET AL. | | |

explain why the requests were not amenable to a response. 12 C.F.R. §§ 1024.36(d)(1)-(2); 12 C.F.R. §§ 1024.35(d)-(e). See, e.g., Amini v. Bank of Am. Corp., No. 11-CV-0974-RSL, 2013 WL 1898211, at *2 (W.D. Wash. May 6, 2013) ("Under RESPA, the servicer has two choices when responding to a borrower's request for information regarding the servicing of his loan: to provide the information requested by the borrower or to provide 'an explanation of why the information requested is unavailable or cannot be obtained by the servicer.'") (quoting 12 U.S.C. § 2605(e)(2)(C)(i)). Compliance with requests that the bank "reasonably determines" to be "overbroad or unduly burdensome" is "not required." 12 C.F.R. § 1024.36(f)(1).

Here, Wells Fargo contends that its responses to the Hacketts' requests were "perfectly acceptable under RESPA." See Bank's MSJ at 17. The bank notes that it "enclosed numerous loan documents as well as a loan information sheet that included significant detail about the loan," which, it claims, were responsive to the Hacketts' requests. Id. It is undisputed that Wells Fargo sent a number of documents to the Hacketts on February 24 and March 21, 2016, and it is undisputed that these responses also explained that the bank could not, in its view, reasonably complete the Hacketts' other requests because they were overbroad, despite revisions. See HSGD ¶¶ 23, 28. However, the Hacketts dispute the reasonableness of that determination. See HSGD ¶¶ 23-24, 26.[7]

The reasonableness of a creditor's response to a borrower's request is an issue of fact that, when disputed, has been found to preclude summary judgment on a RESPA notification claim. See, e.g., Amini, 2013 WL 1898211, at *3 ("Because the reasonableness of Bank of America's purported concern and responses to the QWRs is an issue of fact, the Court finds that summary judgment is inappropriate."); Weber v. Seterus, Inc., No. 16-CV-6620-TMD, 2018 WL 1519163, at *9 (N.D. Ill. Mar. 28, 2018) (denying summary judgment on RESPA notification claim where the court found "issues of material fact as to what a reasonable investigation would have uncovered, and therefore what should have been reflected in [defendant's] notice of error response"); Diehl v. Money Source, Inc., No. 17-CV-0125-WS-B, 2018 WL 2995721, at *6 (S.D. Ala. June 13, 2018) (concluding "that a jury question remains as to whether TMS performed any reasonable

---

[7] Although neither party actually submits the requests for information as attachments to their moving papers, the Court is able to discern some information about the contents of these requests from reviewing the deposition transcript of Walter Hackett, attached as Exhibit R to the Newman Declaration, ECF No. 41-1.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:17-CV-07354-CAS-ASx | Date | November 4, 2019 |
| Title | HACKETT V. WELLS FARGO BANK, N.A., ET AL. | | |

investigation" where plaintiff argued that the bank's "failure to perform a reasonable investigation may be inferred from its unhelpful and largely unresponsive June 6 letter"). Consistent with these decisions, and construing the evidence in the light most favorable to the Hacketts, the Court concludes that the reasonableness of the bank's response is a triable issue that precludes summary judgment on the § 1024.35 and § 1024.36 RESPA claim.

The bank's motion for summary judgment on the § 1024.35 and § 1024.36 RESPA claim is accordingly **DENIED**.

### C.      Hacketts' UCL Claim

To prove a claim pursuant to the UCL, a plaintiff must establish "that the defendant committed a business act that is either fraudulent, unlawful, or unfair." Levine v. Blue Shield of California, 189 Cal. App. 4th 1117, 1136 (2010). Where, as here, the allegation is that a defendant violated the "unlawful" prong of the UCL, the plaintiff must establish that the defendant's challenged business practice violated some other law. See Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co., 20 Cal. 4th 163, 180 (1999) ("By proscribing any unlawful business practice, section 17200 borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable.") (citations and internal marks omitted).

A UCL plaintiff must also establish standing to obtain one of the remedies available under the statute. "[R]emedies for individuals under the UCL are restricted to injunctive relief and restitution." Walker v. Geico Gen. Ins. Co., 558 F.3d 1025, 1027 (9th Cir. 2009) (quoting Buckland v. Threshold Enters. Ltd., 155 Cal. App. 4th 798, 817 (2007)). Injunctive relief is only available if the assertedly wrongful conduct is ongoing or likely to recur. Nelson v. Pearson Ford Co., 186 Cal. App. 4th 983, 1015 (2010). Otherwise, to establish an entitlement to restitution, "a plaintiff must demonstrate that the defendant is in possession of money or property taken from [him or] her." Asghari v. Volkswagen Grp. of Am., Inc., 42 F. Supp. 3d 1306, 1324 (C.D. Cal. 2013); see also Zeppeiro v. Green Tree Servicing, LLC, No. 14–CV–01336–MMM–JCX, 2015 WL 12660398, at *11 (C.D. Cal. Apr. 15, 2015), aff'd, 679 Fed. Appx. 592 (9th Cir. 2017) (affirming same). The failure to establish an entitlement to injunctive relief or restitution requires dismissal of, or judgment against, a UCL claim. See Walker, 558 F.3d at 1027.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**       'O'

| Case No. | 2:17-CV-07354-CAS-ASx | Date | November 4, 2019 |
|---|---|---|---|
| Title | HACKETT V. WELLS FARGO BANK, N.A., ET AL. | | |

Wells Fargo moves for summary judgment on the UCL claim on grounds that there are no predicate violations of law to support UCL liability, and because the Hacketts have not submitted evidence to establish that they are entitled to injunctive relief or restitution.

The Court agrees with the bank's second argument. Even though, as discussed above, a reasonable jury could find Wells Fargo liable to the Hacketts on their 2015 ECOA claim, or either of their RESPA claims, the Hacketts have not presented evidence (or even argument) that establishes their entitlement to injunctive relief or restitution. First, with respect to an entitlement to injunctive relief, there is no evidence in the record that any of the Hacketts' alleged harms are ongoing, or likely to recur. Nor do the Hacketts argue in any of their moving papers that they are. Second, the only injuries the Hacketts assert are not compensable by restitution. The emotional distress the Hacketts claim gives rise to a request for non-economic damages, not to recover unjustly retained "money or property." Lectrodryer v. SeoulBank, 77 Cal. App. 4th 723, 726 (2000) (restitution requires the "unjust retention" of an unentitled benefit). And the actual damages that the Hacketts claim—interest payments to third-party short term lenders, and diminished retirement savings, see HSGD ¶ 39—are not "money or property" that Wells Fargo has "taken" from them, either. Asghari, 42 F. Supp. 3d at 1324. Rather, these out of pocket expenses are *consequential damages* that the Hacketts claim to have inured as a result of the bank's failure to timely or adequately respond to their submissions. The Hacketts' request to recover these expenses amounts to a request for economic damages, not a request restitution, since the expenses are not "money or property" that could be disgorged from the bank.[8]

The bank's motion for summary judgment on the UCL claim is accordingly **GRANTED**.[9]

---

[8] In fact, because the only money Wells Fargo received was money it was already owed, it could not have been unjustly retained. Compare Sutcliffe v. Wells Fargo Bank, N.A., 283 F.R.D. 533, 553 (N.D. Cal. 2012) (holding that payments plaintiffs made pursuant to a challenged loan agreement did not constitute recoverable damages pursuant to contract counterclaim because there was already a preexisting duty to make those payments on the loan).

[9] In its Second MTD Order, the Court refused to dismiss the UCL claim on the same standing grounds that it now relies upon to enter summary judgment. See Hackett v. Wells

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:17-CV-07354-CAS-ASx | Date | November 4, 2019 |
| Title | HACKETT V. WELLS FARGO BANK, N.A., ET AL. | | |

## V. CONCLUSION

In accordance with the foregoing, the Court **DENIES** the Hacketts' motion for summary judgment, **GRANTS** the bank's motion for summary judgment as it relates to the 2013 ECOA and UCL claims, and **DENIES** the bank's motion for summary judgment in all other respects.

IT IS SO ORDERED.

| | 00 | : | 15 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |

---

Fargo Bank, N.A., No. 17-CV-07354-CAS (ASx), 2018 WL 3197698, at *7 (C.D. Cal. June 25, 2018) ("Hackett II"). As the Court explained at that time, the Hacketts' allegations that the bank "charged excess interest, late fees, and other fees" as a result of the ECOA and RESPA violations were sufficient to state a claim. Id. However, the Hacketts did not come forward with any evidence to support these allegations on summary judgment. See Celotex, 477 U.S. at 322 (holding that summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial").